## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00986-SCT


*RAWLS SPRINGS UTILITY DISTRICT*

*v.*

*PAUL S. NOVAK*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/1999 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LARRY O. NORRIS |
| ATTORNEY FOR APPELLEE: | KENNETH HENRY MEYER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED IN PART AND REMANDED - 08/31/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/21/2000 |


**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Rawls Springs Utility District brought suit against Paul S. Novak, demanding $8,000 in compensatory damages and requesting injunctive relief. Because we find that the Forrest County Chancery Court erred in refusing to hold the verbal agreement at issue void and in applying equitable estoppel, this case is reversed in part and remanded to the trial court.

### FACTS AND PROCEDURAL HISTORY

¶2. Dealing with a sketchy record and avoiding prolixity, we note only the facts and procedural history which are essential to an understanding of our decision.

¶3. Rawls Springs Utility District, Inc., is a public corporation created by the Forrest County Board of Supervisors pursuant to §§ 19-5-151 through -207 of the Mississippi Code of 1972, as amended. The District was created on April 12, 1973, for the purpose of providing water and sewer service to area residents. It is "a body politic and corporate with power of perpetual succession." Miss. Code Ann. § 19-5-165 (1995). The members of the District Board of Directors are appointed by the County Board of Supervisors. The bylaws of the District Board were adopted on August 26, 1990.

¶4. Paul S. Novak, a developer of a trailer park in the Rawls Springs community, wanted to have 32 water

meters installed at his trailer park. During 1991 and unbeknownst to the District Board, Novak and Harvey Bryant, president and chief executive officer of the District at that time, entered into an oral agreement for the District's maintenance personnel to install the meters for $50 per meter. This agreement was contrary to the District's regulations which provided for a charge of $300 per meter, as is evidenced by the minutes of a June 14, 1988, District Board meeting. Subsequent to the agreement, Jean Robbins, secretary and bookkeeper for the District, billed Novak on 32 occasions for the meter installments, from 1991 through early 1997. All payments were received by Robbins.

¶5. In further contradiction of the District's regulations, Bryant allowed Novak to tap into the District's water line without any governmental inspection and to have the water meters set up on Novak's private property, as opposed to having the meters set up on a public right-of-way.

¶6. After all 32 meters were installed, the District Board became aware of Bryant's agreement with Novak. On February 25, 1997, the Board sent a letter to Novak advising him that he would be charged $300 for his future water taps. On July 11, 1997, a letter from the District demanded payment from Novak in the amount of $8,000 for a $250 underpayment on each of the 32 meters.

¶7. After it did not receive the requested payment, on September 4, 1997, the District filed suit in the Chancery Court of Forrest County, Mississippi, seeking judgment for $8,000, and injunctive relief requiring Novak to move the meters from his private property to the public right-of-way at Novak's expense. Following a non-jury trial, the Chancellor rendered final judgment and concluded that: (1) the doctrine of equitable estoppel applied in favor of Novak, thus denying any monetary recovery by the District; (2) Novak was enjoined from any further action to install water meters without strict compliance with the applicable regulations, bylaws, and published charges of the District; and (3) Novak was required to participate in remedial action, at the District's election, to bring existing water and sewer connections into compliance with the District's regulations and bylaws, and was therefore enjoined to cooperate with the District in providing the necessary labor, either in person or by payment, to accomplish such remedial compliance action. A motion for new trial was summarily denied by the trial court. Feeling aggrieved, the District appeals to this Court, asserting five points of error:

**I. THE DENIAL OF MONETARY DAMAGES WAS AGAINST THE WEIGHT OF THE EVIDENCE.**

**II. THE CHANCELLOR ERRED IN FINDING THAT THE DISTRICT WAS NOT A POLITICAL SUBDIVISION OF THE STATE, AND THUS NOT SUBJECT TO THE SAME GENERAL LAWS, RIGHTS, AND GUIDELINES.**

**III. THE CHANCELLOR ERRED IN FINDING THAT THE DISTRICT WAS EQUITABLY ESTOPPED BY THE ACTIONS OF ITS PRESIDENT.**

**IV. THE CHANCELLOR ERRED IN FINDING THAT THE DISTRICT'S PRESIDENT COULD CONTRACT WITH NOVAK.**

**V. THE CHANCELLOR ERRED IN THE SCOPE OF REMEDIAL ACTION WHICH NOVAK IS REQUIRED TO TAKE.**

## DISCUSSION

¶8. For the purposes of clarity and efficient discussion, the District's points of error are combined and rephrased.

**I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE DISTRICT WAS NOT A POLITICAL SUBDIVISION OF THE STATE, AND THUS NOT SUBJECT TO THE SAME GENERAL LAWS, RIGHTS, AND GUIDELINES.**

**II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE DISTRICT'S PRESIDENT COULD CONTACT WITH NOVAK, WITHOUT APPROPRIATE ENTRY OF THE CONTRACT IN THE BOARD'S MINUTES.**

¶9. The chancellor rejected the District's argument that it could not be bound by the unauthorized acts of its president in contracting with Novak to have the meters installed for $50. In so doing, the trial court stated that it "entertain[ed] serious doubts" that the District enjoyed "the same status and protection afforded municipalities, counties, and like subdivisions of the state" *vis a vis* the authority of such bodies to act through their minutes only. Thus, the issue is whether the District may have acted through its minutes only, so as to have rendered the agreement between Bryant and Novak void. As this is a question of law, this Court proceeds de novo. *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss. 1991).

¶10. The District is a public corporation created by the Forrest County Board of Supervisors pursuant to Miss. Code Ann. §§ 19-5-151 through -207 (Supp. 1999), as amended, and is "a body politic and corporate with power of perpetual succession." Miss. Code Ann. § 19-5-165 (1995). Although there are no cases which directly address the issue of whether the board of a utilities district duly created by a county board of supervisors may act only through its minutes, several of this Court's cases provide guidance on the point. As the District Board is a public corporation and body politic, we conclude that the District Board's action fall under those generally recognized holdings that limit such bodies to speak and act only through their minutes.

> [A]lways it has been the positive rule in this state, both by statute and by a long line of judicial decisions strictly enforcing those statutes, that boards of supervisons [sic] can bind counties, or districts therein, only when acting within their authority and in the mode and manner by which this authority is to be exercised under the statues, and that their contracts, and every other substantial action taken by them must be evidenced by entries on their minutes, and can be evidence in no other way.

*Board of Supervisors v. Dawson*, 208 Miss. 666, 672, 45 So. 2d 253 (1950) (quoting *Lee County v. James*, 178 Miss. 554, 559, 174 So. 76, 77 (1937)); *see also Thompson v. Jones County Community Hosp.*, 352 So. 2d 795, 797 (Miss. 1977) ("We therefore conclude that a contract with a *public board* may be enforced if enough of the terms and conditions of the contract are contained in the minutes. . . .") (emphasis added); *Colle Towing Co. v. Harrison County*, 213 Miss. 442, 448, 57 So. 2d 171, 172 (1952) ("It has been repeatedly held in this State that a board of supervisors can contract and render the county liable only by a valid order duly entered upon its minutes, that all persons dealing with a board of supervisors are chargeable with knowledge of this law, . . ."). The reasoning behind this rule is:

> (1) That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some

individual member; and (2) that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, and to which all the public may have access to see what was actually done.

*Lee County*, 178 Miss. at 558-59, 174 So. at 77.

¶11. As evidenced by the District Board's minutes of the June 14, 1988, meeting, the charge for a water meter installation was set at $300. It is undisputed that there was no such speaking by the District Board through its minutes authorizing Bryant to enter into an agreement with Novak for Novak to pay only $50 for a meter installation. In fact, the record reveals that none of the District Board members were aware of the agreement between Bryant and Novak until all or nearly all 32 meters had been installed. Only the District Board could have approved such an agreement, and therefore, the unauthorized acts of Bryant render the agreement void. Thus, the chancellor erroneously took exception to this Court's holdings concerning the actions of a public board.

### III. WHETHER THE CHANCELLOR ERRED IN APPLYING THE DOCTRINE OF EQUITABLE ESTOPPEL IN DENYING THE DISTRICT'S MONETARY CLAIM AGAINST NOVAK.

¶12. Upon the chancellor's application of equitable estoppel in favor of Novak, the District's prayer for a monetary judgment against Novak in the amount of $8,000 underpayment was denied. The chancellor's determination that the District was estopped from asserting its monetary claim is a conclusion of law. In reviewing errors of law, this Court proceeds de novo. *Cooper*, 587 So. 2d at 239. The essential elements of equitable estoppel are:

Conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

*Chapman v. Chapman*, 473 So. 2d 467, 470 (Miss. 1985) (quoting *Crow v. Fotiades*, 224 Miss. 422, 80 So. 2d 478, 486 (1955)).

The burden of establishing the elements of an estoppel is on the party asserting the estoppel. *Hathorn v. Illinois Central Gulf Railroad Co.,* 374 So. 2d 813, 817 (Miss. 1979). The existence of the elements of an estoppel must be established by a preponderance of the evidence. *Gates v. Owen Chevrolet Co.*, 294 So. 2d 179, 180 (Miss. 1974).

*Chapman,* 473 So. 2d at 471.

¶13. As indicated above, Bryant, and not the District Board, properly speaking through its minutes, entered into the subject agreement with Novak. Although Bryant may be said to be estopped from asserting a claim inconsistent with his representation to Novak, the District Board itself never spoke through its minutes to authorize meter installments for $50. The District Board has not changed its position or done other acts to justify the imposition of equitable estoppel. The District Board is not attempting to deny what it previously induced another party to believe and take action on. Nor is the District Board guilty of acts or declaration designed to induce another to alter his position injurious to himself. It is a "well-established rule in

Mississippi that the doctrine of equitable estoppel cannot be applied against the state or its counties where the acts of their officers were unauthorized." *Oktibbeha County Bd. of Educ. v. Town of Sturgis*, 531 So. 2d 585, 589 (Miss. 1988). Accordingly, the chancellor erroneously applied the doctrine of equitable estoppel against the District.

¶14. Without presenting any argument, the District also asserts that the trial court erred in not requiring Novak to move the water meters from his trailer park property to a public right-of-way, as contemplated by the District Board's bylaws, at his own expense, so that the District could maintain and read the meters. However, the final judgment appears to have addressed this issue in favor of the District. The judgment reads: "At the election of RSUD appropriate remedial action may be taken to bring the existing water and sewer connections (from the main line to the individual meters) on Novak's property into compliance with applicable regulations and by-laws, and therefore Novak is enjoined to cooperate with RSUD and to provide the necessary labor, either in person or by payment therefor to accomplish such remedial compliance action." As it appears that the District's requested injunctive relief was granted, no further discussion of this issue is warranted.

## CONCLUSION

¶15. For the above stated reasons, we hold that the agreement between Bryant and Novak is void and that equitable estoppel is inapplicable. The judgment is, therefore, reversed in part, and this case is remanded to the trial court for entry of a judgment in favor of the District against Novak for $8,000 in compensatory damages, plus post-judgment interest.

¶16. **REVERSED IN PART AND REMANDED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR.**