GRIFFIS, P.J.,
for the Court:
¶ 1. W.G. Yates and Sons Construction Company (“Yates”) appeals the City of Waveland, Mississippi’s award of the “Sewer Reconstruction Project North of Railroad Tracks” to Reynolds, Inc. (“Reynolds”), an Indiana corporation. On appeal, Yates asserts the circuit court erred by: (1) finding Reynolds was a “resident contractor” under Mississippi Code Annotated section 31-3-21(3) (Rev.2010); (2) finding Waveland was not required to reject Reynolds’s bid for failure to use bid addenda in Waveland’s instructions to bidders in the bid documents; and (3) finding Waveland’s decision to award the sewer project to Reynolds was not arbitrary, capricious, discriminatory, or without substantial evi-dentiary basis. Yates seeks remand to the circuit court for a hearing on damages. Finding error, we reverse and remand to the circuit court for a hearing on compensatory damages.
FACTS AND PROCEDURAL HISTORY
. ¶ 2. Waveland advertised for competitive sealed bids under Mississippi Code Annotated section 31-7-3 (Rev.2010) for the sewer project. Seven contractors submitted sealed bids for the project. On May 14, 2009, Waveland opened the sealed bids. Reynolds’s revised bid was $9,356,601, and Yates’s revised bid was $9,471,859.[1]
¶ 3. Reynolds and Yates submitted the two lowest bids. Waveland published the agenda for its regularly scheduled May 20, 2009 Board of Aldermen meeting. Item 21 on the meeting agenda was a motion to approve Yates as the next lowest and best bidder for the sewer project, issue notice of the award, authorize the mayor to sign the construction contract, and issue notice to proceed, pending approval by the city attorney.
¶ 4. According to Yates, item 21 on the meeting agenda was based on the project engineer’s recommendation that Waveland reject Reynolds’s bid and award the sewer project to Yates. While the record does not show a reason, agenda item 21 on the May 20, 2009 Board meeting relating to the award of the sewer project to Yates was tabled, and no vote was taken by the Board on the proposed award to Yates.
*965 ¶ 5. On May 26, 2009, Dodds Dehmer, Vice President and General Counsel for Yates, sent a letter to Zach Butterworth, City Attorney for Waveland. In this letter, Dehmer asserted Reynolds was a nonresident contractor based in Indiana. Yates objected to the award of the sewer project to Reynolds because Reynolds did not attach a copy of Indiana’s current law pertaining to that state’s treatment of nonresident contractors as required by section 31-3-21(3). Dehemer’s letter also argued that Reynolds failed to use revised bid forms in submitting its bid and that Reynolds’s bid should have been rejected by Waveland under section 12.4 of the instruction to bidders contained in the bidding documents.
¶ 6. On May 28, 2009, Reynolds’s attorney sent a letter to Butterworth about Reynolds’s bid. Reynolds provided But-terworth a certifícate of fact from the Secretary of State of Indiana regarding a merger between Reynolds and Layne Merger Sub 2, Inc., or Layne Christensen, Co. (“Layne Christensen”), and other corporate documents showing Layne Christensen’s acquisition of Reynolds in 2005.
¶ 7. Reynolds is incorporated and has its principal place of business in Indiana. Reynolds is a wholly owned affiliate of Layne Christensen, which is a Delaware corporation. According to Waveland, Layne Christensen and its predecessor companies, Layne-Central, Co. and Layne-Western, Co., have conducted business and had offices in Mississippi since 1976.
¶ 8. On June 1, 2009, L. Bruce Newton, the project engineer for Waveland’s sewer project, sent a letter to John T. Longo, Mayor of Waveland, and recommended the sewer project be awarded to Reynolds as the lowest and best base bid. The June 2, 2009 agenda for the regularly scheduled Waveland Board of Aldermen meeting included a motion to approve Reynolds as the lowest and best bidder and approving the contracts, pending approval by the city attorney and notice to proceed with the sewer project.
¶ 9. At the June 2, 2009 meeting, representatives from Yates were in attendance. When the sewer project item was called on the agenda, William R. Purdy, an attorney for Yates, sought to be recognized on behalf of Yates. Purdy’s request to speak before the Board was denied. The Board, without discussion, voted to award the sewer- project to Reynolds. After the Board completed its agenda, Purdy was permitted to speak off the record during the public comments portion of the Board meeting.
¶ 10. Purdy asserted the following points on behalf of Yates: (1) Reynolds did not attach a copy of its resident state’s current bid-preference law as required by statute; (2) Reynolds did not use the correct bid form as revised by Waveland’s pre-bid addendum; (3) Reynolds’s bid was corrected by the project engineer to conform to the revised bid sheets; and (4) Waveland’s award of the sewer project to Reynolds exceeded Waveland’s powers and was illegal.
¶ 11. Aggrieved by Waveland’s award of the sewer project to Reynolds, Yates appealed the decision to the Hancock County Circuit Court on June 11, 2009, pursuant to Mississippi Code Annotated section 11-51-75 (Rev.2002). On August 8, 2009, Yates filed a motion to stay construction of the sewer project pending a ruling on its appeal. Yates argued' in the motion to stay that it would suffer continued harm if Reynolds was allowed to proceed with the construction of the sewer project prior to the circuit court’s ruling on its bill of exceptions. On September 27, 2009, the circuit court entered an order affirming the decision of Waveland to *966 award the sewer project to Reynolds. On December 18, 2009, the circuit court entered an order denying Yates’s motion to stay the sewer project.
STANDARD OF REVIEW
¶ 12. In Precision Communications, Inc. v. Hinds County, Mississippi, 74 So.3d 366, 369 (¶ 9) (Miss.Ct.App.2011), we reiterated the long-standing jurisprudence relating to our review of the decision of a municipal board:
The scope of review is limited when examining the actions of a municipal board. For questions of law, a municipal board’s decision is reviewed de novo. Furthermore, we apply a de novo standard of review to issues of statutory interpretation. Otherwise, we will not set aside the action of the governing body of a municipality unless such action is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis. An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment or with disregard for the surrounding facts and circumstances. Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a mere scintilla of evidence.
Id. (citing Nelson v. City of Horn Lake ex. rel. Bd. of Aldermen, 968 So.2d 938, 942 (¶ 10) (Miss.2007)) (internal citations and quotations omitted).
ANALYSIS

1. Whether the circuit court erred in finding Reynolds to be a resident contractor under Mississippi Code Annotated section 31-8-21(3).

¶ 13. We review this portion of the circuit court’s decision de novo because it involves the interpretation of a statute. Nelson, 968 So.2d at 942 (¶ 10). Yates contends the circuit court erred in finding Reynolds was a resident contractor under section 31-3-21(3), which reads in part:
In the letting of public contracts!,] preference shall be given to resident contractors, and a nonresident bidder domiciled in a state having laws granting preference to local contractors shall be awarded Mississippi public contracts only on the same basis as the nonresident bidder’s state awards contracts to Mississippi contractors bidding under similar circumstances; and resident contractors actually domiciled in Mississippi, be they corporate, individuals, or partnerships, are to be granted preference over nonresidents in awarding of contracts in the same manner and to the same extent as provided by the laws of the state of domicile of the nonresident. When a nonresident contractor submits a bid for a public project, he shall attach thereto a copy of his resident state’s current law pertaining to such state’s treatment of nonresident contractors. Any bid submitted by a nonresident contractor which does not include the nonresident contractor’s current state law shall be rejected and not considered for award. As used in this section, the term “resident contractors” includes a nonresident person, firm or corporation that has been qualified to do business in this state and has maintained a permanent full-time office in the State of Mississippi for two (2) years prior to January 1, 1986, and the subsidiaries and affiliates of such a person, firm or corporation.
(Emphasis added).
¶ 14. Under section 31-3-21(3), a nonresident contractor shall attach a copy of its state’s current law related to the treatment of non-resident contractors in that state. The purpose of this statute is to ensure Mississippi contractors will be af *967 forded the same treatment when bidding on a project in the non-resident bidder’s state. 'The statute further provides that where a non-resident contractor fails to attach its state’s current law related to the state’s treatment of non-resident contractors, such bid shall be rejected.
¶ 15. The purpose of this language is to determine whether a Mississippi contractor will be afforded similar treatment in the non-resident contractor’s state. The language is mandatory that a non-resident contractor shall attach a copy of its state’s preference statute.
¶ 16. Waveland argues, however, that Reynolds is a resident contractor and was not required to submit a copy of Indiana’s contractor-preference statute pertaining to the treatment of non-resident contractors. According to Waveland, Reynolds is a wholly owned affiliate of Layne Christensen. Waveland asserts that Layne Christensen is a resident contractor under section 31-3-21(3).
¶ 17. There is no dispute that, standing on its own, Reynolds is not a resident contractor under section 31-3-21(3). Reynolds is an Indiana corporation domiciled in Indiana with its principal office located in Orleans, Indiana. Reynolds’s state of incorporation is Indiana.
¶ 18. Instead, Waveland contends that we should look to Layne Christensen’s business relationship with Mississippi and Reynolds’s corporate affiliation with Layne Christensen in construing Reynolds’s status as a resident contractor. The only evidence in the record concerning Layne Christensen’s business operations in Mississippi is the affidavit of Steven F. Crooke, Senior Vice President and General Counsel for Layne Christensen and Reynolds. Reynolds also submitted certain corporate documents to Waveland showing its corporate relationship with Layne Christensen. The Crooke affidavit states in part:
Layne Christensen Company has conducted business in the State of Mississippi since 1976 when it acquired certain assets and facilities located in Jackson, Mississippi,] and Cleveland, Mississippi,] from The Singer Company. At the time of such acquisition from The Singer Company, Layne Christensen Company conducted business as “Layne-Western Company, Inc.” In May 1981, “Layne-Western Company, Inc.” was reorganized and re-incorporated in the State of Delaware. The newly organized “Layne-Western Company, Inc.” then qualified to conduct business in the State of Mississippi in June 1981. On June 5, 1992, “Layne-Western Company, Inc.” changed its name to “Layne, Inc.” and then in March 1996, “Layne, Inc.” changed its corporate name to “Layne-Christensen Company.”
[[Image here]]
As of the.date hereof, Layne Christensen Company continues to operate its business in Jackson, Mississippi^] and has done so continuously since 1976.
¶ 19. In Lawson v. Honeywell International, Inc., 75 So.3d 1024, 1027 (¶ 7) (Miss.2011), the Mississippi Supreme Court stated: “The function of the Court is not to decide what a statute should provide, but to determine what it does provide.” Id. (citation omitted). “The Court must not broaden or restrict a legislative act.” Id. (citation omitted). “The Court’s goal is to give effect to the intent of the Legislature.” Id. (citing City of Natchez, Miss. v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992)).
¶ 20. “To determine legislative intent, the Court first looks to the language of the statute.” Id. (citation omitted). “If the words of a statute are clear and unambiguous, the Court applies the plain meaning of *968 the statute and refrains from using principles of statutory construction.” Id. (citing Clark v. State ex rel. Miss. State Med. Ass’n, 381 So.2d 1046, 1048 (Miss.1980)).
¶ 21. Section 31-3-21(3) imposes two separate and distinct requirements for a person, firm, or corporation to be considered a resident contractor in Mississippi. First, the resident contractor must be qualified to do business in Mississippi and, second, the resident contractor must have maintained a permanent full-time office in Mississippi for two years prior to January 1, 1986. The statute is drafted in the conjunctive, and thus, both requirements must be met in order for a contractor to be considered a resident contractor under the statute.
¶ 22. In its order dated September 27, 2010, upholding Waveland’s award of the sewer project to Reynolds, -the circuit court found:
Layne Christensen has maintained an office in the State of Mississippi, has been qualified to do business in Mississippi[,] and has been doing business in Mississippi since 1976. As such, the Court cannot find that the City of Wave-land’s decision to award the sewer project to Reynolds as a resident contractor was ‘arbitrary, capricious, discriminatory or illegal or without substantial evidential basis.’
The circuit court’s finding regarding Layne Christensen is not supported by substantial evidence in the record. According to the Crooke affidavit: (1) Layne Christensen has conducted business in Mississippi since 1976, and (2) Layne Christensen continues to operate its business in Jackson and has continuously done so since 1976.
¶ 23. We find the record before this Court fails to establish that Layne Christensen is a resident contractor under section 31 — 3—21(3).[2] The Crooke affidavit does not contain specific evidence sufficient to show Layne Christensen has maintained a full-time office in Mississippi for two-years before January 1,1986.
¶ 24. Instead, the Crooke affidavit states Layne Christensen has “conducted” and “operated” its business in Mississippi since 1976. The language in the statute is unambiguous that a contractor must have both done business and maintained a full-time office in Mississippi for two years prior to 1986. We find there is nothing ambiguous in the legislature’s language.
¶ 25. The record does not indicate why the Waveland Board did not vote to award the contract to Yates at the May 20, 2009 meeting as reflected in the Board agenda. Following the May 20, 2009 Board meeting, Reynolds submitted the Crooke affidavit and accompanying corporate documents to Waveland on May 28, 2009.
¶ 26. The submission of the Crooke affidavit came fourteen days after Waveland opened the sealed bids of both Yates and Reynolds as well as other competing bidders. The record does not reflect why Reynolds submitted Crooke’s affidavit, although the cover letter accompanying the affidavit indicates that Reynolds’s counsel had previous conversations with Wave-land’s attorney about the sewer project. On its face, the affidavit appears to be an attempt by Reynolds to satisfy the statutory requirements of a resident contractor.
¶ 27. Regardless of the reason Reynolds submitted the Crooke affidavit, it stands as the only evidence offered by Waveland in support of its position that *969 Layne Christensen is a resident contractor. However, based upon our review of the record and the unambiguous language of the statute, we find Layne Christensen is not a resident contractor within the meaning of section 31-3-21(3).
¶ 28. The Crooke affidavit provided no specific information to substantiate that Layne Christensen maintained a full-time office in Mississippi for the requisite statutory period. There was no proof offered in the Crooke affidavit showing Layne Christensen’s physical or mailing address, telephone numbers, or other specific information that would demonstrate Layne Christensen maintained a full-time office in Mississippi for two years prior to January 1, 1986. We find the vague language in the Crooke affidavit that Layne Christensen “continues to operate its business in Jackson, Mississippi[,] and has done so continuously since 1976” falls short of the specific language in the statute.
¶ 29. If the intent of the Crooke affidavit was to satisfy the statutory requirements of section 31-3-21(3), then it should have set forth the information necessary to comply with the statute. If, as the record demonstrates, Reynolds’s counsel was communicating with Waveland’s attorney about Reynolds’s status as a resident contractor, Waveland’s governing authority had a legal obligation to make factual findings through its minutes that Reynolds qualified as a resident contractor in Mississippi. Without such evidence, we cannot say that the circuit court’s determination that Layne Christensen has maintained a full-time office in Mississippi since 1976 was supported by substantial evidence. This is not what the record shows.
¶ 30. This Court has not previously interpreted the language of section 31-3-21(3) as to when a person, firm, or corporation is a resident contractor within the meaning of the statute. The Mississippi Attorney General has been asked to give an opinion on the question. While this Court is not bound by an attorney general’s opinion, we do recognize their persuasive value. Blackwell v. Miss. Bd. of Animal Health, 784 So.2d 996, 1000 (¶ 9) (Miss.Ct.App.2001).
¶ 31. In Miss. Att’y Gen. Op. No. 2009-00723, 2009 WL 5422795, Brannon (Dec. 28, 2009), the City of Gulfport sought an opinion from the Attorney General regarding the residency of contractors under section 31-21-3. Specifically, Gulfport requested an opinion as to whether a subsidiary company and parent company must both have offices in Mississippi for two years prior to 1986 in order to qualify as a resident contractor. The Attorney General stated:
Section 31-3-21 contains a special provision which requires that a nonresident contractor and its subsidiaries and affiliates be considered a resident contractor for purposes of this section when the nonresident contractor (1) has been qualified to do business in Mississippi and (2) has maintained a permanent full-time office in Mississippi two years prior to January 1, 1986. If the Gulfport City Counsel makes the determination, consistent with the fact[s], that the nonresident contractor meets these requirements, then the nonresident contractor must be treated as a resident contractor for purposes of [s]ection 31-3-21.
Id. at *2.
¶ 32. The Attorney General opined that if a governing body (such as the City of Waveland) determines, consistent with facts, that the non-resident contractor meets the requirements of section 31-3-21(3), then the non-resident contractor must be considered as a resident contractor for purposes of the statute. Id.
¶ 33. We agree with the Attorney General’s opinion in Brannon to the extent *970 that it is the duty of the governing authority to make a factual finding whether a non-resident contractor meets the residency requirements of section 31-3-21(3). We do not agree with the Attorney General’s opinion in Brannon to the extent that it implies a factual finding by a governing authority that a non-resident contractor meets the residency requirements is not subject to later review by the courts. However, specific factual findings on the record by the applicable governing authority would be subject to a deferential standard of review by the courts. Nelson, 968 So.2d at 942 (¶ 10).
¶ 34. Waveland, through its Board of Aldermen, may only act through its minutes. Rawls Springs Util. Dist. v. Novak, 765 So.2d 1288, 1291 (¶ 10) (Miss.2000). In Novak, the court reiterated the long-standing doctrine that:
Always it has been the positive rule in this state, both by statute and by a long line of judicial decisions strictly enforcing those statutes, that boards of [supervisors] can bind counties, or districts therein, only when acting within their authority and in the mode and manner by which this authority is to be exercised under the statutes, and that their contracts, and every other substantial action taken by them must be evidenced by entries on their minutes, and can be evidenced in no other way.

Id.

¶ 35. In Lee County v. James, 178 Miss. 554, 555, 174 So. 76, 77 (Miss.1937), the supreme court explained that:
[W]hen authority is conferred upon a [B]oard, the public is entitled to the judgment of the [B]oard after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and ... the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but ... the action taken will be evidenced by a written memorial entered upon the minutes at the time, and to which all the public may have access to see what was actually done.
¶ 36. There is no evidence in the record that Waveland’s governing body made a factual determination and explained in the Board minutes the basis for treating Reynolds as a resident contractor. In fact, there is no record evidence to show that the Board considered whether Reynolds met the requirements of section 31-3-21. The minutes of the Board’s meeting on June 2, 2009, which is the date the Board approved the award of the sewer project to Reynolds, contains the following entry:
SEWER SYSTEM RECONSTRUCTION NORTH OF RAILROAD PROJECT/CONTRACTS (EXHIBIT F)
Re: Reynold’s Contraction as lowest and best bidder for the Sewer System Reconstruction North of Railroad Project.
Alderman Schmit moved, seconded by Alderman Stahler[,] to approve Rey-nold’s Construction as lowest and best bidder for the Sewer Systems Reconstruction North of Railroad [P]roject, as well as approving the contracts, pending approval of City Attorney and Notice to Proceed.
A vote was called for with the following results:
Voting Yea: Stahler, Geoffrey, Schmitt and Piazza
Voting Nay: None
Absent: None
¶ 37. Based on the record, the Board did not discuss the basis upon which it determined that Layne Christensen qualified as a resident contractor. Clearly in the days leading up to the June 2, 2009 *971 Board meeting, counsel for Reynolds and Waveland discussed Layne Christensen’s business presence in Mississippi as reflected in the May 28, 2009 Crooke affidavit and attached correspondence.
¶ 38. However, there is no evidence in the record that Waveland’s governing authority considered or was even aware of whether Reynolds met the state’s public-bid laws. In the absence of such a determination by Waveland’s Board, on the record, that Layne Christensen met the statutory residency requirements, the Board’s decision to award the sewer project to Reynolds was arbitrary and capricious and not supported by substantial evidence.
¶ 39. We find the circuit court erred in ruling that Layne Christensen maintained a full-time office in Mississippi for two years prior to January 1, 1986, as set out in the September 27, 2010 order denying Yates’s appeal on the bill of exceptions. The circuit court’s finding is not supported by substantial evidence, and we therefore reverse and find that Layne Christensen should not have been considered a resident contractor with respect to its bid on the Waveland sewer project.
¶ 40. Because Waveland should not have treated Layne Christensen as a resident contractor, Reynolds likewise should not have been treated as a resident contractor and, therefore was required to submit a copy of Indiana’s current law regarding the treatment of non-resident contractors. Because it did not do so, Reynolds’s bid should have been rejected under section 31-3-21(3).

2. Whether the circuit court erred in finding that Waveland was not required to reject Reynolds’s bid because it did not include revised bid forms as required by Waveland’s bidding instructions.

¶41. Yates’s next assignment of error asserts that Waveland should have rejected Reynolds’s bid for non-compliance with instructions to bidders set out in Waveland’s bidding documents. This is due to the fact that Reynolds did not use bid addenda in submitting its bid and bid on the wrong size sewer pipe.
¶ 42. Waveland argues that, while Reynolds did not use an addendum form in submitting its bid form, this did not affect the price, quantity, quality, or competitiveness of Reynolds’s bid. Waveland argues that it reserved the right to waive bid informalities and that it acted within its rights to accept Reynolds’s bid. Yates counters that even if Waveland could waive bidding irregularities, only the Board of Aldermen, acting through its minutes, could undertake such action.
¶ 43. Section 12.4 of the instruction to bidders, published by Waveland for the sewer project, provides:
If any [ajddenda are issued concerning changes in the [bjidding [documents, the [bjidder must use the latest version of any form so issued for inclusion in his [bjidding [documents. Failure to use the correct form shall be deemed as sufficient cause for rejection of any bid so submitted.
Section 16.1 provides that Waveland can waive bid informalities under certain circumstances:
The [o]wner reserves the right to reject any and all [b]ids[;] to waive any and all informalities not involving price, time[,] or changes in the [w]ork with the [successful [b]idder[;] and the right to disregard all nonconforming, non-responsive, unbalanced[,] or conditional bids.
¶ 44. A governing authority may waive a bid irregularity if the intended correction is evident on the face of the bid *972 document. Hemphill Constr. Co. v. City of Laurel, 760 So.2d 720, 724 (¶ 16) (Miss.2000). Waivers of bid irregularities are also permissible where mandatory statutory provisions are not violated; the irregularity does not in any way destroy the competitive character of the bid; the irregularity has no effect as to the amount of the bid; and the irregularity does not give one bidder an advantage or benefit over the other bidders. Id.
¶ 45. There is no dispute in the record that Reynolds did not use bid addenda in submitting its bid for the sewer project. The point of contention is that Reynolds bid on a fifteen inch gravity sewer line instead of a sixteen inch sewer line called for in the bid addenda. After the sealed bids were opened on May 14, 2009, Wave-land’s project engineer used the figures submitted by Reynolds in the original bid and transferred those figures to the revised bid forms.
¶ 46. While mathematical errors were corrected by the project engineer for both Yates and Reynolds, Yates objects to the correction by the project engineer with respect to Reynolds’s failure to use the correct bid forms and bid on the correct size sewer line. Waveland asserts that the change by the project engineer was an immaterial typographical error in the bid and did not require Waveland to reject Reynolds’s bid.
¶ 47. According to Waveland:
Even if you assume[] (arguendo) that Yates’[s] bid on the line item it questions (the [sixteen] inch pipe) would have been $0.00, such only reduces [Y]ates’[s] bid by $8,925.00 ([l]ine items 61-66 at $1,487.50 per line). (Citation omitted). Reynolds submitted a bid bond agreeing to be bound by their price. Thus, making these assumptions, Reynolds’s bid would still have been $106,332.47 less than Yates’[s] bid. (Yates’[s] bid minus $8,925.00, minus Reynolds’[s] bid). Yates was not at an economic disadvantage[,] and it has failed to meet its burden of showing such a disadvantage.
¶ 48. Waveland concedes that Reynolds submitted a bid with the wrong pipe size. Waveland asserts, however, that the change was an immaterial typographical' change that did not require Waveland to reject Reynolds’s bid. In support, Wave-land relies on Hill Brothers Construction & Engineering Co. v. Mississippi Transportation Commission, 909 So.2d 58 (Miss.2005). The circuit court, in denying Yates’s appeal, found with respect to the incorrect bid form that:
The purpose of accepting public bids is “so that all such public contracts may be secured at the lowest cost to taxpayers.” Hill Bros., 909 So.2d [at 69]. The Court finds that the only difference between the forms Reynolds submitted and the addenda were the line items for [fifteen] inch versus [sixteen] inch gravity sewer lines. This did not change the fact that Reynolds submitted a bid that was more than $115,000 lower than the bid submitted by Yates.
¶ 49. In Hill Brothers, the supreme court upheld the Mississippi Transportation Commission’s (MTC) award of a highway project to Angelo Iafrate Construction, LLC (“Iafrate”) although the winning bid contained an irregularity that the MTC waived. Under its bidding documents, the MTC reserved the right to waive bid irregularities. In affirming the MTC’s waiver of bid irregularities, the supreme court reasoned that:
The irregularity did not alter the bidding process, did not provide any bidder with an advantage or benefit over any other bidder, did not prejudice the rights of any other bidder or the public, did not alter the price, quality!,] or quantity of its bid, and the waiver of the *973 irregularity did not provide an opportunity for fraud or favoritism or affect the integrity of the competitive bidding process. Therefore, the MTC retained the authority to waive the irregularity and award the bid to Iafrate. The minutes of the MTC constitute relevant and substantial evidence that the MTC considered this matter seriously, made the appropriate findings on record, and acted within its discretion in awarding the project to Iafrate. The trial court correctly noted that to have awarded the contract to Hill Brothers would have done a disservice to taxpayers of this State and would have also been contrary to the very purpose of competitive bidding.
Id. at 68 (¶ 43) (emphasis added).
¶ 50. Unlike the MTC in Hill Brothers, the City of Waveland made no factual findings in the minutes of the June 2, 2009 Board meeting as to: (1) whether Reynolds’s bid irregularity could be waived since it failed to comply with section 12.4 of the instruction to bidders; and (2) if the bid irregularity could be waived, the facts supporting the Board’s decision to waive the bid irregularities and award the sewer project to Reynolds.
¶ 51. Instead of making findings through its minutes on the waiver of bid irregularities, Waveland’s project engineer corrected Reynolds’s bid in the certified bid tabulation submitted to Waveland. While the court in Hill Brothers found that the MTC made specific factual findings on the record supporting the waiver of bid irregularities, no similar findings were made here.
¶ 52. In J.H. Parker Construction Co. v. Board of Aldermen of the City of Natchez, 721 So.2d 671 (Miss.Ct.App.1998), this Court considered whether the City of Natchez could waive bid irregularities in the letting of a public contract. In Parker, one of the unsuccessful bidders challenged the award of the contract to another bidder, alleging that the successful bidder failed to file a pre-qualification of bidders statement with its bid and that the City of Natchez improperly waived the bidding irregularity. Id. at 671 (¶ 1). We concluded that the successful bidder’s failure to include a pre-qualification statement did not alter or destroy the competitive bidding process and that the successful bidder did not receive an advantage or benefit over other bidders. Id. at 677 (¶ 25). In reaching this conclusion, we found that:
[T]he City had the discretion to determine whether Lampkin’s proposal sufficiently complied with the bid invitation. The City waived the technical defect in Lampkin’s bid, and accordingly, some degree of deference must be given to the decision of the governing body. Absent any evidence that the City’s decision was arbitrary or capricious, we affirm the trial court’s finding that the City awarded the construction project to the lowest and best bidder.
Id. at 677 (¶ 26).
¶ 53. Section 16.1 of the Waveland’s instructions to bidders did provide for a waiver of bid informalities not involving price. Here, the bid irregularity related to the failure to use bid addenda, and thus a bid on the incorrect size sewer pipe. Waveland argues that Reynolds’s failure to use bid addenda did not change the outcome of the overall bid price between Reynolds and Yates, with Reynolds remaining the lowest bidder even after adjusting for Reynolds’s error.
¶ 54. However, this decision should have been made by Waveland’s governing authority, through its minutes, so that the decision to waive bid irregularities for a public contract was clearly detailed and open to the public. In fact, there is nothing in the record showing that Waveland *974 granted Reynolds a waiver of section 12.4 of the instruction to bidders. Instead, Reynolds’s bid document was corrected without discussion by the Board on the record.
¶ 55. In Parker, 721 So.2d at 677 (¶ 24), we noted that the supreme court has recognized the following purposes of competitive bidding:
to secure economy in the construction of public works and the expenditures of public funds for materials and supplies needed by public bodies; to protect the public from collusive contracts; to prevent favoritism, fraud, extravagance, and improvidence in the procurement and to promote actual, honest, and effective competition to the end that each proposal or bid received and considered for the construction of public improvement may be in competition with all other bids upon the same basis, so that all such public contracts may be secured at the lowest cost to taxpayers.
(citation omitted).
¶ 56. In order to carry out the purposes of the public-bidding laws, a determination to waive bid irregularities in public contracts must be made by the applicable governing authority through its minutes. While Waveland argues that the correction to Reynolds’s bidding documents was “an immaterial typographical error in the bid” and that it did not impact the “price, quantity, quality[,] or competitiveness of its bid[,] there is nothing in the record to support this argument.”
¶ 57. Nothing in the record shows that Waveland’s Board made a finding that the Reynolds’s bid irregularity could be waived. Such findings are necessary to safeguard the integrity of the public bidding process.
¶ 58. Waveland’s own instructions to bidders provided that failure to use the correct bid forms shall be deemed as sufficient cause for rejection of any bids submitted. Despite this mandatory language, Waveland accepted Reynolds’s bid.
¶ 59. If, as Waveland argues on appeal, the irregularity could be waived and if the facts supported the waiver, the Board should have addressed this matter through its minutes. Nelson, 968 So.2d at 942-43 (¶ 13); see also Myers v. Blair, 611 So.2d 969, 972 (Miss.1992) (“minutes are the exclusive evidence of what the [BJoard did, and ... parol evidence is not admissible to show what actions the [Bjoard took.”). It did not.
¶ 60. We find the circuit court’s decision that Waveland was not required to reject Reynolds’s bid was arbitrary and capricious and not supported by substantial evidence. We .therefore reverse the circuit court’s judgment.

3. Whether Yates is entitled to a hearing before the circuit court to determine damages.

¶ 61. Yates seeks remand to the circuit court for a hearing on compensatory damages. On August 8, 2009, Yates filed a motion to stay construction of the sewer project pending a ruling on the bill of exceptions. Yates asserted that it would suffer continued harm if Reynolds was allowed to proceed with the construction of the sewer project pending the court’s ruling on its bill of exceptions.
¶ 62. On September 27, 2009, the circuit court entered an order dismissing Yates’s appeal and affirming the decision of Wave-land to award the sewer project to Reynolds. On December 18, 2009, the circuit court entered an order denying Yates’s motion to stay the sewer project. In the order, the circuit court correctly noted that Yates would not suffer irreparable injury by denial of the stay because it could pursue compensatory damages.
¶ 63. In City of Durant v. Laws Construction Co., 721 So.2d 598, 606 (¶ 34) *975 (Miss.1998), the supreme court held: “Compensatory damages under the law of contracts are the proper measure of damages for an aggrieved bidder which was entitled to the award of the contract.” There, the aggrieved bidder filed bill of exceptions under Mississippi Code Annotated section 11-51-75. City of Durant, 721 So.2d at 600 (¶ 9). In finding that the appropriate measure of damages was compensatory damages, the supreme court held that:
Even under the plain language of the statute, it seems that the circuit court had the authority to “render such judgment as the [Bjoard or municipal authorities ought to have rendered” by awarding the contract to Laws. By doing so then Laws has a contract claim for breach and contract damages since the City allowed another company to provide the same services that Laws had a legal right to perform. Compensatory damages under the law of contracts are the proper measure of damages for an aggrieved bidder which was entitled to the award of the contract. Therefore, this Court holds that Laws is entitled to damages measured by the law of contracts where a complete and adequate remedy is available, the enforcement of the statutory bid laws are upheld[,j and legislative intent to make sure that public contracts are awarded on a competitive basis and not for any other purpose is reinforced.
Id. at 606.
¶ 64. We agree that the holding in City of Durant is applicable here. Yates filed a bill of exceptions under section 11-51-75, which was dismissed by the circuit court. The circuit court erred in finding that Reynolds was a resident contractor under section 31-3-21(3).
¶ 65. Furthermore, the circuit court erred in finding that Waveland was not required to reject Reynolds’s bid even though Reynolds did not comply with the instructions to bidders issued by Wave-land. Reynolds’s bid should have been rejected, and Yates was the next lowest and best bidder. We find that Yates is entitled to a hearing on damages consistent with City of Durant. We therefore remand this case to the circuit court for a hearing as to whether Yates is entitled to compensatory damages.
¶ 66. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. LEE, C.J., BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J„ NOT PARTICIPATING.

. Both Reynolds’s and Yates's bids were revised by Waveland’s project engineer, stemming from mathematical corrections. Yates does not contest these mathematical calculations.

. Yates also argues that regardless of Layne Christensen's residency status under section 31-3-21(3), Reynolds cannot 'piggyback” Layne Christensen for purposes of being a resident contractor. The Court need not reach a decision on this issue.